IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

LYNN A. HINKEL,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commission of Social Security,

        Defendant.

No. C09-1048

RULING ON JUDICIAL REVIEW

—————————————

## TABLE OF CONTENTS

I.      *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *PRINCIPLES OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  *FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      *A.*   *Hinkel's Education and Employment Background.* . . . . . . . . . . . . 4
      *B.*   *Hinkel's Medical History.* . . . . . . . . . . . . . . . . . . . . . . 5
      *C.*   *Administrative Hearing Testimony.* . . . . . . . . . . . . . . . . . . 8
            *1.*    *Hinkel's Testimony.* . . . . . . . . . . . . . . . . . . . . . . 8
            *2.*    *Vocational Expert's Testimony.* . . . . . . . . . . . . . . . . 10

V.    *CONCLUSIONS OF LAW.* . . . . . . . . . . . . . . . . . . . . . . . . . 11
      *A.*   *ALJ's Disability Determination.* . . . . . . . . . . . . . . . . . . . . 11
      *B.*   *Objections Raised by Claimant.* . . . . . . . . . . . . . . . . . . . . 13
            *1.*    *The Opinions of Dr. Stenberg and Dr. Gibson.* . . . . . . . . . 13
            *2.*    *Hinkel's Subjective Pain Allegations.* . . . . . . . . . . . . . 18
      *C.*   *Reversal or Remand.* . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.  *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VII. *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Lynn A. Hinkel on November 3, 2009, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Hinkel asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability benefits. In the alternative, Hinkel requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL HISTORY

On August 23, 2006, Hinkel applied for disability insurance benefits. In her application, Hinkel alleged disability beginning March 24, 2006 due to shoulder and neck problems, persistent pain, high blood pressure, anxiety, and the inability to lift 20 pounds or lift overhead. Hinkel's application was denied on December 6, 2006. The claim was then denied upon reconsideration on March 20, 2007. On April 10, 2007, Hinkel requested an administrative hearing before an Administrative Law Judge ("ALJ"). On January 5, 2009, Hinkel and her attorney appeared before ALJ Debra L. Bice via a video hearing. Both Hinkel and vocational expert Elizabeth Albreck testified. In a decision dated April 1, 2009, the ALJ denied Hinkel's disability claim. The ALJ determined that Hinkel was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing other work that exists in significant numbers in the national economy. Hinkel appealed the ALJ's decision. On September 2, 2009, the Appeals Council denied Hinkel's request for review. Consequently, the ALJ's April 1, 2009 decision was adopted as the Commissioner's final decision.

On November 3, 2009, Hinkel filed this action for judicial review. The Commissioner filed an Answer on January 22, 2010. On February 20, 2010, Hinkel filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled. On April 21, 2010, the Commissioner filed a responsive

brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On December 11, 2009, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 405(g), the Court has the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision 'if the ALJ's findings are supported by substantial evidence on the record as a whole[.]'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Echelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.' *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In

3

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained the standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 525 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 867 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Moore*, 572 .3d at 522 ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005)."); *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.").

## IV. FACTS

### A. Hinkel's Education and Employment Background

Hinkel was born in 1957. She completed high school, but has no training or education beyond high school. The record contains a detailed earnings report for Hinkel,

covering her employment from 1976 to 2006. Hinkel had a range of earnings in this period of time, from a low of $962.22 (1977) to a high of $20,639.65 (2000). Since 2006, Hinkel has worked part-time for Taco John's and has earned a nominal sum in that time period.

## B.  Hinkel's Medical History

In January 2006, Hinkel sought medical attention, complaining of neck pain with right arm paresthesia and pain, as well as bilateral buttock pain radiating down the legs. She was diagnosed with advanced cervical spondylosis with multi-level degenerative disc disease and severe cervical spinal stenosis. Hinkel was then referred to Dr. David Field, M.D., an orthopedic specialist. He addressed the pain and numbness in Hinkel's right leg, as well as the tingling, discomfort, and ache in Hinkel's arms. An examination revealed a long area of spinal stenosis, for which Dr. Field recommended cervical laminoplasty.

In February 2006, Dr. Charles Clark, M.D., saw Hinkel and assessed congenital cervical stenosis, mechanical low back pain, and mild shoulder impingement. In March 2006, Dr. Clark performed a C3-C7 laminoplasty on Hinkel. The discharge summary indicates that there were no complications and Hinkel tolerated the procedure well. At a two-week post-op follow-up, Hinkel reported that her arm symptoms were marginally better and that her leg symptoms were completely better.

However, in May 2006, at her six-week follow-up for the laminoplasty, Hinkel reported continued pain. She also reported that she had ceased taking hydrocodone due to potential complications with her sleep apnea. She requested and received an alternative pain medication, Tramidol. In June 2006, Hinkel again complained of right shoulder pain. Dr. Clark recommended one more month off from work, then returning to work on light duty, as tolerated, with a 20 pound weight restriction. X-rays of Hinkel's spine at this time revealed post surgical changes on the right from C3-C7 consistent with laminoplasty; loss of normal cervical lordosis with no abnormal motion with flexion or extension; and moderate spondylosis C4-C7.

Dr. Clark then referred Hinkel back to Dr. Field to further address her right shoulder pain. In July 2006, Hinkel reported to Dr. Field that the pain in her shoulder had been almost constant for the past few years, the symptoms increased with overhead motion, abduction, and rotation, and that she experiences pain at night. Physical examination of the shoulder revealed full range of motion, but weakness, with strength only plus 3 to 4-5. An MRI of the right shoulder revealed degenerative changes to the acromioclavicular joint, and an x-ray revealed a large spur.

In August 2006, Dr. Field performed rotator cuff surgery on Hinkel's right shoulder. At the follow-up to her surgery in September, Hinkel was generally doing well and Dr. Field expected gradual improvement. By October, Dr. Field saw that Hinkel's strength had improved, but would need greater improvement before she would be able to return to work. He expected this improvement to happen in the following few weeks. In November, however, Hinkel experienced decreased strength and range of motion and pain with movement. Dr. Field noted that her decreased range of motion and abduction seemed atypical.

In November 2006, Dr. Michael Stenberg, M.D., performed a consultative physical examination of Hinkel. Dr. Stenberg noted significant impairment in range of motion and strength in the right shoulder. Dr. Stenberg stated that, in his clinical opinion, Hinkel was impaired. He recommended she lift/carry no more than ten pounds occasionally and no more from knee to shoulder level.[1] He also advised that she stand, walk, and move for no more than an hour at a time, and it was likely that she was going to have to spend a significant portion of her day reclined.

Also in November 2006, Dr. Keith Gibson, Ph.D., performed a consultative mental evaluation on Hinkel. Dr. Gibson reported a GAF score equal to 60, and noted that, due

---

[1] Mr. Stenberg advised Hinkel to avoid lifting anything from a surface below knee-height and from a surface above shoulder-height. He suggested, should she need to lift and carry anything, she pick it up from a level position that did not involve bending or stretching.

to her health problems, Hinkel was currently unable to maintain the pace and stamina required for full-time employment, but was capable of maintaining attention and concentration sufficient for work tasks.

In late November, Dr. Field noted that Hinkel was still struggling with abduction of her right shoulder and was experiencing overall weakness, but an arthogram revealed no defect in the rotator cuff. Dr. Field prescribed further physical therapy.

On December 5, 2006, Dr. Mary Greenfield, M.D., reviewed Hinkel's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Hinkel. Dr. Greenfield determined that Hinkel could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk about six hours in an eight-hour workday, (4) sit about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Greenfield further determined that Hinkel could occasionally climb ramps or stairs, balance, stoop, kneel, and crouch, but she could never climb ladders, ropes, or scaffolds and could never crawl. Dr. Greenfield also found that Hinkel was limited in reaching in all directions, including overhead, but had no visual, communicative, or environmental limitations.

On December 6, 2006, Dr. David Beeman, Ph.D., reviewed Hinkel's medical records and provided DDS with a Psychiatric Review Technique assessment for Hinkel. On this assessment, Dr. Beeman found no medically determinable mental heath impairment. Dr. Beeman noted that Hinkel had not been receiving mental health treatment and that there were no documented mental concerns in the physical medical record.

In February 2007, an MRI revealed some bilateral neuroforaminal narrowing on the right side of the cervical spine, which Dr. Field concluded may be contributing to Hinkel's pain and reduced range of motion. Hinkel was then referred to Patrick Sterrett, M.D., for a nerve conduction study in March and November of 2007. Neither study showed a

neurological reason for the problems with the right shoulder. However, in November 2007 Dr. Sterrett diagnosed Hinkel with carpel tunnel syndrome.

## C. Administrative Hearing Testimony

### 1. Hinkel's Testimony

At the administrative hearing, Hinkel testified that she experienced pain and discomfort in her neck and shoulder, and that she sought medical attention because of it. She testified that her physician discovered her spinal cord to be "mashed" and that she required surgery.[2] According to Hinkel, the surgery and physical therapy didn't help relieve the pain. When asked by the ALJ about her current symptoms, Hinkel testified that she has stiffness and pain in her neck and shoulder "like [her neck] is going to snap," that the pain "takes her breath away," and that she could not raise her arms above her head.[3] When asked whether anything made the pain better, Hinkel responded that while the pain was always present, ice or heat and lying down would typically reduce the pain.

Hinkel testified that she had stopped seeing her treating physician, Dr. Fields, because he "pretty much told [her] that there was nothing else he could do for [her]."[4] Hinkel testified that Dr. Clark, who performed the surgery, told her the goal of the surgery was not to relieve the pain, but rather to prevent Hinkel from becoming paralyzed. She stated that her pain had increased after surgery and that while she was able to function prior to the surgery, she could no longer do so. Hinkel also testified that when she reported her persistent pain to Dr. Clark, he told her it would either go away in time or she would have to deal with it.

The ALJ also asked Hinkel what medications she was taking. Hinkel testified that she was on medications for pain, blood pressure, and anxiety; and was also taking a

---

[2] *See* Administrative Record at 42-43.

[3] *Id.* at 43.

[4] *Id.* at 45.

muscle relaxer. Hinkel stated that she had last been prescribed hydrocodone in 2006, and still had some remaining medication from that prescription. Additionally, Hinkel stated that she and her physicians had worked for five years to find a pain medication that was suitable for her, but had been unable to do so.

The ALJ also inquired into Hinkel's daily activities. Hinkel testified that she was able to tend to her own personal care, with the use of assisting devices and a handicap accessible bathroom. She stated that she was able to prepare small, simple meals for herself, but that her son and sister helped her with household chores. Hinkel also testified she had difficulty driving because she was unable to turn her neck. When the ALJ asked whether Hinkel was able to grocery shop, Hinkel responded that she needed assistance bringing the groceries into the house and putting them away. Hinkel testified that she could lift a gallon of milk or a twelve pack of soft drinks on a level area.[5]

The ALJ then asked Hinkel about her mobility. Hinkel explained that she could stand and walk, but not for long periods of time due to her back pain. Hinkel said that she could sit for a half hour to an hour, but then she would need to move around or recline to relieve pain. She also testified that she could stand or be on her feet for a half hour to an hour, but would then need a 10-15 minute break. Hinkel stated that in a two or three hour work period she would need at least one or two breaks, but Taco John's (her present employer) accommodated these limitations.

In an examination by her attorney, Hinkel stated that she had not worked an eight hour day since her injury and that two to three hours is the most that she is able to work per day. Hinkel testified that she currently works at Taco John's two to three hours a day, five days a week. She explained that, due to her many years of employment, Taco John's makes many accommodations for her, like providing a partner to assist her, allowing her to take more breaks than are normally permitted, and excusing her from duties that are normally required of employees.

---

[5] *Id.* at 54.

Finally, Hinkel testified as to her activities when she returned home from work everyday. She indicated that she would occasionally do a few dishes, but largely reclined and tried to relieve her pain. She further testified that the only time she is not reclining is if she is getting ready for work, bathing, preparing food, or using the restroom.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Elizabeth Albreck with a hypothetical for an individual who is able to perform

> light work as defined in the regulations. In addition, the individual could not climb ladders, ropes or scaffolds, and could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and cannot crawl at all. In addition, the claimant can only occasionally reach overhead with either arm.

(Administrative Record at 63.) The vocational expert testified that under such limitations, Hinkel could not perform her past relevant work. The vocational expert concluded, however, that Hinkel could perform the following work: (1) counter clerk (500 positions in Iowa and 56,000 in the nation), (2) usher (400 positions in Iowa and 58,000 in the nation), and (3) bakery worker (150 in Iowa and 17,000 in the nation). Next, the ALJ altered the hypothetical to pertain to an individual who needed to take a break away from the work station every two hours. The vocational expert stated that the individual could still do these jobs. Finally, the ALJ altered the hypothetical to include that the individual would need to recline for one hour out of the work day, outside of the break time. The vocational expert testified that under such limitations, Hinkel would be precluded from all competitive employment.

Hinkel's attorney then asked the vocational expert to alter the ALJ's second hypothetical so that the individual needed to take a ten minute break every hour. The vocational expert testified that this limitation would preclude all employment. The attorney then asked the vocational expert to consider a hypothetical individual who had impairments in her concentration, persistence, and pace such that she could not do simple routine

competitive tasks for the last third of the work day. The vocational expert testified that these restrictions would also preclude employment.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Hinkel is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria for any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors, such as age, education, and work experience. *Id*. The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "It is 'the ALJ's

11

responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. § 404.1545.

The ALJ applied the first step in the analysis and determined that Hinkel had not engaged in substantial gainful activity since March 24, 2006, the alleged onset date of her disability. At the second step, the ALJ concluded from the medical evidence that Hinkel had the following combination of severe impairments: degenerative disc disease of the cervical spine (status post a March 2006 laminoplasty), degenerative joint disease of the lumbar spine, degenerative joint disease of the right shoulder (status post rotator cuff repair in September 2006), obesity, and moderate obstructive sleep apnea. At the third step, the ALJ found that Hinkel did not have an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Hinkel's RFC as follows:

> [Hinkel] has the residual functional capacity to perform less than the full range of light work in that she is able to lift and/or carry 20 pounds occasionally, 10 pounds frequently, sit, stand and/or walk about six hours in an 8 hour workday, and push and/or pull on an unlimited basis. However, the claimant can never climb ladders, ropes, or scaffolds, or crawl, and she can only occasionally climb ramps or stairs, balance, stoop, kneel, or crouch. Moreover, she is limited in her ability to reach in all directions, including overhead (20 C.F.R. 404.1567(b)).

(Administrative Record at 23.) Also at the fourth step, the ALJ determined that Hinkel was prevented from performing any past relevant work, pursuant to 20 C.F.R. 404.1565. The ALJ determined that Hinkel's past work, as she performed it, exceeded her residual functional capacity. At the fifth step, the ALJ determined that Hinkel's RFC did not prevent her from doing other work. Based on the testimony of the vocational expert, the ALJ determined that Hinkel could work as an usher, counter clerk, or bakery worker, all

positions which exist in significant numbers in the national economy. (Administrative Record at 28.) Therefore, the ALJ concluded that Hinkel was not disabled.

## B.  Objections Raised by Claimant

Hinkel contends that the ALJ erred in two respects.  First, Hinkel argues that the ALJ's decision improperly relied on the opinion of a non-examining physician in determining the RFC, while dismissing the consistent opinions of two examining physicians.  Second, Hinkel argues that the ALJ erred in discrediting her subjective complaints of pain, which were consistent with the medical evidence on the record.

### 1.  The Opinions of Dr. Stenberg and Dr. Gibson

First, Hinkel argues that the ALJ erred in dismissing the opinion of Dr. Michael Stenberg when his opinion was supported by the medical evidence.  Dr. Stenberg performed a consultative examination and record review at the request of the Social Security Administration.  His report stated, in relevant part:

> It is my clinical opinion that Hinkel is impaired.  She has significant impairment in cervical range or motion.  She has marked impairment in range of motion and strength in the right shoulder.  I would recommend that she lift and carry no more than approximately 10 lb. on an occasional basis and then no more from knee to shoulder level.  Would recommend that she stand, walk, and move about for no more than an hour at a time and it was likely that she was going to have to spend a significant portion of her day recumbent or reclining.

(Administrative Record at 307.)  Hinkel argues that the ALJ erroneously disregarded Dr. Stenberg's report.  Hinkel maintains that the ALJ does not cite any contradictory medical evidence that would discount Dr. Stenberg's medical opinion, nor does she cite testimony from Hinkel that contradicts the opinions of the examining doctors.

Similarly, Hinkel contends that the ALJ's dismissal of Dr. Keith Gibson, Ph.D., who performed a mental health evaluation, was also an error.  Dr. Gibson noted in his clinical examination that "[d]ue to her physical health problems, client is currently unable

to maintain the pace and stamina required for full-time employment."[6] Hinkel asserts that the ALJ improperly dismissed Dr. Gibson's report, citing only that it was beyond the purview of his evaluation. Finally, Hinkel contends that the ALJ improperly relied on the opinion of Dr. Greenfield in determining the RFC. Hinkel argues that the ALJ merely adopted Dr. Greenfield's non-examining assessment, and that this assessment was inconsistent with the record as a whole.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. § 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

An ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). "If the RFC

---

[6] Administrative Record at 302.

assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 (S.S.A.).

Additionally, an ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order to ensure "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such as assessment is made on a case-by-base basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Having thoroughly reviewed the entire record, the Court finds that the ALJ's decision (1) fails to identify the specific inconsistencies that led her to dismiss the opinions of the examining doctors, (2) fails to fully and fairly develop the record by omitting the medical opinions and testimony that are consistent with both the record and each other, and (3) improperly adopts the opinion of a non-examining doctor in determining Hinkel's RFC, while failing to explain why the opinions of other physicians were not incorporated.

Specifically, in dismissing Dr. Stenberg's report, the ALJ states that:

> Dr. Stenberg's opinion that the claimant could only lift 10 pounds occasionally and stand, walk, and sit for one hour at a time is not supported by the medical evidence, her testimony, or her reports to treating physicians that she was improving.

(Administrative Record at 27.) The ALJ does not, however, specifically identify what medical evidence or testimony is inconsistent with this opinion. To the contrary, Hinkel's testimony appears to corroborate Dr. Stenberg's opinion. Hinkel points to, and the Court agrees with, several pieces of testimony that corroborate Dr. Stenberg's opinion that

Hinkel could only lift 10 pounds from knee to shoulder level and could only stand, walk, or sit for one hour at a time. First, Hinkel testified that she needed assistance bringing groceries into her house, but that she could lift a gallon of milk or twelve pack of soda from a level area. Presumably, bags of groceries may easily exceed 10 pounds, but both a gallon of milk and a twelve pack of soda weigh roughly 10 pounds.[7] Thus, Dr. Stenberg's opinion regarding Hinkel's lift/carry restrictions is consistent with the claimant's testimony. Second, Hinkel testified that she could only sit or stand for a half hour to an hour before she would need to "take a little break" and either move around or recline.[8] This statement directly corroborates Dr. Stenberg's opinion that Hinkel was only able to stand, walk, and sit for one hour at a time. By failing to acknowledge the parts of Hinkel's testimony that were entirely consistent with Dr. Stenberg's medical opinion, the ALJ failed to fully and fairly develop the record with regard to Dr. Stenberg's report.

As for Dr. Gibson's opinion, the ALJ's explanation for dismissing these observations is insufficient. The ALJ asserts that Dr. Gibson's "observations were not within the purview of his evaluation," but provides absolutely no explanation for this statement. While the ALJ is certainly permitted to reject a medical opinion from a non-treating source, she should do so only after addressing the *Wiese* factors for determining the weight to be given to a non-treating opinion. *See Wiese*, 552 F.3d at 731 (citing 20 C.F.R. § 404.1527(d)). The ALJ, however, makes no reference to any of the *Wiese* factors, nor provides any further reasons for disregarding Dr. Gibson's observations. As such, the ALJ failed to fully and fairly develop the record with regard to Dr. Gibson's opinion.

Finally, in determining Hinkel's RFC, the ALJ erred in entirely adopting Dr. Greenfield's opinion, a non-examining source, and providing no explanation for failing

---

[7] *See* Plaintiff's Brief 12.

[8] Administrative Record at 55.

to adopt opinions from other treating or examining sources. First, Hinkel points out that the ALJ's RFC was taken directly from Dr. Greenfield's RFC assessment. The Court agrees that the ALJ's RFC and Dr. Greenfield's assessment are nearly identical.[9] As a necessary consequence of adopting this RFC, the ALJ included opinions from no other medical sources, including those of Dr. Stenberg, who examined Hinkel. An ALJ must assess a claimant's RFC based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence includes the opinions of examining physicians. *Lacroix*, 465 F.3d at 887. If an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ is required to explain the reasons for failing to adopt the opinion(s) of the medical source. *See* SSR 96-8p, 1996 WL 374184 (S.S.A.). The ALJ's explanation for failing to incorporate Dr. Stenberg's opinion in the RFC is that she accorded his opinion "little weight."[10] However, the Court has already found that the ALJ has failed to fully and fairly develop the record with regard to Dr. Stenberg's medical opinion. As such, any exclusion of Dr. Stenberg's opinion from the RFC is premature until the ALJ fully and fairly develops the record with respect to his opinion.

Furthermore, more weight should be given to the opinion of a specialist about issues related to his area of expertise than to the opinion of a non-specialist. *See Quails v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1998) (citing 20 C.F.R. § 404.1527(d)(5) (encouraging the Commissioner to give greater weight to the opinion of a specialist over a non-specialist); *see also Davis v. Apfel*, F. Supp. 1152, 1164 (W.D. Mo. 1997) (stating the ALJ should not have relied on the report of the non-examining doctor when the record did not demonstrate his qualifications). The record provides no information as to Dr. Greenfield's specialty or qualifications to evaluate the nature and extent of Hinkel's disability. However, Dr. Stenberg is a specialist of occupational medicine. As such, Dr. Stenberg's

---

[9] *Compare* Administrative Record at 23 with Administrative Record at 314-21.

[10] Administrative Record at 27.

opinion should be accorded more weight than Dr. Greenfield's opinion. Consequently, the ALJ has an increased obligation to explain an RFC crafted entirely from Dr. Greenfield's opinion. In light of the weight that would typically be given to a medical source like Dr. Stenberg, as opposed to a non-examining source like Dr. Greenfield, the ALJ has failed to give a satisfactory explanation for excluding Dr. Stenberg's opinion from the RFC and relying solely on the opinion of Dr. Greenfield.

The Court finds that this matter should be remanded so that the ALJ may fully and fairly develop the record with regard to Dr. Stenberg's and Dr. Gibson's opinions. If the ALJ continues to accord both these opinions "little weight," she needs to provide clear and specific reasons for doing so. Additionally, these reasons should be supported by evidence from the record, particularly with regard to the ALJ's contention that Dr. Stenberg's opinion is inconsistent with the medical record and Hinkel's testimony.

### 2.    *Hinkel's Subjective Pain Allegations*

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complains "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant' subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining the deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In her decision, the ALJ concludes that the claimant's allegations of pain and functional limitations are inconsistent throughout the record. In explaining this determination, the ALJ discusses two of the *Polaksi* factors: functional restrictions and pain medication. However, not all of the factors are explicitly addressed, and the Court

finds the ALJ's discussion of the functional restriction and pain medication factors to be incomplete. For example, the ALJ concludes that Hinkel's testimony that she was able to lift a gallon of milk or twelve pack of soda "belies her allegations of functional limitations."[11] However, the ALJ provides no explanation as to *why* this testimony "belies" Hinkel's allegations of functional limitations. Rather, in section *V.B.1* of this ruling, the Court determined that Hinkel's ability to lift a gallon of milk or twelve pack of soda is consistent with Dr. Stenberg's estimation of her functional limitations. Additionally, in addressing Hinkel's use of pain medication, the ALJ noted that Hinkel still had pain medications from 2006, which "would indicate she did not require frequent medications"[12] and make Hinkel's pain allegations suspect. However, the *Polaski* factors require an ALJ to also consider the effectiveness and side effects of the pain medications, which the present ALJ fails to do. Ms. Hinkel testified that she and her physicians had worked for years to find a pain medication that didn't make her "feel weird,"[13] and Hinkel's medical history reveals several different pain medications prescribed over the past four years.[14] Moreover, Hinkel was unable to continue with certain pain medications due to possible complications resulting from her sleep apnea[15] and hypertension.[16] A more complete analysis of the pain medication factor would include this information, as it bears on the additional considerations of effectiveness and potential side effects of the pain

---

[11] Administrative Record at 26.

[12] *Id.*

[13] Administrative Record at 48.

[14] *See Id.* at 202 (Lortab prescribed 1/12/2006); *Id.* at 204 (Hydrocodone prescribed 3/2006); *Id.* at 453 (Ibuprofen and Lortab prescribed 5/30/2008); *Id.* at 459 (Celebrex prescribed 10/9/2007).

[15] *Id.* at 246-47.

[16] *Id.* at 200.

medication Hinkel was taking. Because the ALJ has only addressed two of the *Polaski* factors, and the discussion of these two factors was incomplete and unsatisfactory, the ALJ's decision lacks full consideration of all of the *Polaski* factors.

Because the ALJ's decision lacks full consideration of and a complete examination of the *Polaski* factors, the Court determines that remand is appropriate. On remand, the ALJ shall set forth in detail her reasons for finding Hinkel's subjective pain allegations to be credible or not credible, and she will do so with respect to the *Polaski* factors. If, on remand, the ALJ determines Hinkel's allegations to be not credible, the ALJ will fully explain the reasons for her determination and specifically cite any inconsistencies between Hinkel's allegations and evidence in the record.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause of a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to

pertinent medical evidence and opinions. The ALJ also failed to provide a proper credibility determination for Hinkel. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ shall fully and fairly develop the record with regard to the opinions of Drs. Stenberg and Gibson. Specifically, if the ALJ rejects these opinions, she must explain in detail her reasons for doing so. With respect to Dr. Stenberg's opinion in particular, the ALJ must be specific in identifying inconsistencies between his medical opinion and Hinkel's testimony. The ALJ is further instructed to make a proper credibility determination in accordance with the requirements set forth in *Polaski*.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 23rd day of June, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA